1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)

2
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596

3
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700

4
E-Mail: ltfisher@bursor.com

5
*Counsel for Plaintiff*

6

7
### UNITED STATES DISTRICT COURT

8
### EASTERN DISTRICT OF CALIFORNIA

9

10
JOI BUTTS, individually and on behalf of all
others similarly situated,

11

12
                    Plaintiff,

13
        v.

14
CIBO VITA, INC.,

15
                    Defendant.

Case No.

**CLASS ACTION COMPLAINT**

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff, Joi Butts ("Plaintiff"), brings this action on behalf of herself, and all others similarly situated against Defendant Cibo Vita, Inc. ("Defendant").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of Defendant with respect to the marketing and sales of a number of its trail mix products under the Nature's Garden brand, including Nature's Garden Heart Healthy Trail Mix, Nature's Garden Omega-3 Deluxe Mix, and Nature's Garden Cranberry Health Mix (collectively the "Products").

2.      Excessive consumption of added sugar has consistently been found to increase the risk of several medical conditions, including but not limited to, heart disease, diabetes, obesity, high cholesterol, and hypertension.

3.      Despite the evidence, which Defendant is well aware of, Defendant engages in a pervasive marketing campaign, advertising its high-sugar trail mix Products with health and wellness claims that the Products are "heart healthy."  Defendant makes these misrepresentations to increase the price and sales of its Products.  However, these claims are deceptive and misleading because they incompatible with the known dangers of excessive sugar consumption.

4.      As a direct and proximate result of Defendant's false and misleading advertising claims and marketing practices, Defendant has caused Plaintiff and the members of the putative Class to purchase Products that do not live up to their representations.  Plaintiff and other similarly situated consumers have been harmed in the amount they paid for the Products.

5.      Plaintiff seeks relief in this action individually, and on behalf of all purchasers of the Products for violations of the California Consumers Legal Remedies Act ("CLRA"), Civil Code §§

1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, False

Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, breach of express warranty, breach

of implied warranty of merchantability, and for unjust enrichment.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as

modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as

defined below, is a citizen of a different state than the Defendant, there are more than 100 members

of the Class, and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest

and costs.

7.     This Court has personal jurisdiction over Defendant because Defendant conducts and

transacts business in the State of California, contracts to supply goods within the State of California,

and supplies goods within the State of California.

8.     Venue is proper because Plaintiff and many Class Members reside in the Eastern

District of California and Defendant sells their Products throughout the Eastern District of

California.

## PARTIES

9.     Plaintiff Joi Butts is an individual consumer who, at all times material hereto, was a

citizen of California residing in Solano County.

10.     Ms. Butts made several purchases of Defendant's Products, including Nature's

Garden Cranberry Health Mix and Nature's Garden Heart Healthy Mix.  Before purchasing the

Products, Ms. Butts reviewed information about the Products, including Defendant's representations

on packaging labels that the Products were "heart healthy."   When purchasing the Products, Ms.

Butts also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and

understood them as representation and warranties by Defendant that the Products were "heart

healthy."

11.     Ms. Butts relied on Defendant's false, misleading, and deceptive representations and warranties about the Products in making her decision to purchase the Products.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products had she known Defendant's representations were not true.  Defendant's Products are not "heart healthy" due to the excessive amounts of added sugar.

12.     Ms. Butts has made countless purchases of the Products throughout the Class Period. Had Ms. Butts known the truth—that the representations she relied upon in making her purchase were false, misleading, and deceptive—she would not have purchased the Products.  Ms. Butts did not receive the benefit of the of her bargain, because Defendant's Products are not "heart healthy." Ms. Butts understood that each purchase involved a direct transaction between herself and Defendant, because her Products came with packaging, labeling, and other materials prepared by Defendant, including representations and warranties regarding the advertised claims.  Ms. Butts would be interested in purchasing Defendant's Products in the future if the representations about the Products being "heart healthy" were true.

13.     Defendant Cibo Vita, Inc. is a corporation with a principal place of business in Totowa, New Jersey.  Defendant manufactures, markets, and advertises and distributes the Products throughout the United States, including California.  Defendant manufactured, marketed, and sold the Products during the relevant class period.

**FACTUAL BACKGROUND**

14.     Nature's Garden's Products are sold nationwide at a variety of retail chains, including Costco and Walmart, as well as many online retailers, such as Amazon.

15.     As explained in detail below, Defendant makes numerous false and misleading health and wellness claims regarding the Products.

**Nature's Garden Heart Healthy Trail Mix**

16.     The packaging for Nature's Garden Heart Healthy Trail Mix represents that it is "heart healthy":



17.     Defendant markets its Product as "heart healthy," as shown above, despite being aware of the numerous negative health complications that can arise from consuming excessive amounts of added sugar.

18.     Instead, the front packaging only provides that it is a trail mix that contains a "blend of walnuts, black raisins, cranberries, almonds, pumpkin seeds and dark chocolate chunks."

19.     The back of the Product's packaging contains similar "heart healthy" claims:



20.     Defendant describes the presence of cranberries and raisins as "a sweet and delicious way to consume more fruit throughout the day."

21.     Defendant makes this representation of the fruit despite it being one of the main sources of added sugar in the Product.

22.     One twenty-six-ounce package of Nature's Garden Heart Healthy Trail Mix contains a total of 250 grams of sugar, including **125 grams of added sugar**.  One serving of Defendant's Heart Healthy variety is a mere ¼ cup, which is roughly one handful of trail mix.  Defendant represents that one serving constitutes 10 grams of total sugar, including 5 grams of added sugar.

**Nature's Garden Omega-3 Deluxe Mix**

23.     The packaging for Nature's Garden Omega-3 Deluxe Mix represents that it is "heart healthy":



24.     Defendant markets its Product as "heart healthy," as shown above, despite being aware of the numerous negative health complications that can arise from consuming excessive amounts of added sugar.

25.     Instead, the front packaging only provides that it is a trail mix that contains a "blend of almonds, pecans, walnuts, cranberries, pistachios and pepitas."

26.     The back of the Product's packaging contains similar "heart healthy" claims:



27.    Defendant describes the presence of cranberries as "a sweet and delicious way to consume more fruit throughout the day."

28.    Defendant makes this representation of the cranberries despite it being one of the main sources of added sugar in the Product.

29.    One twenty-six-ounce package of Nature's Garden Omega-3 Deluxe Mix Trail Mix contains a total of 220 grams of sugar, including nearly **200 grams of added sugar**.  One serving of Defendant's Omega-3 variety is a mere ¼ cup, which is roughly one handful of trail mix.  Defendant represents that one serving constitutes 10 grams of total sugar, including 9 grams of added sugar.

**Nature's Garden Cranberry Health Mix**

30.    The packaging for Nature's Garden Cranberry Health Mix represents that it is "heart healthy":



31.     Defendant markets its Product as "heart healthy," and a "health mix," as shown above, despite being aware of the numerous negative health complications that can arise from consuming excessive amounts of added sugar.

32.     Instead, the front packaging only provides that it is a trail mix that contains a "blend of cranberries, walnuts, almonds, black raisins, golden raisins, peanuts, pepitas, and sunflower seeds."

33.     The back of the Product's packaging contains similar "heart healthy" claims:



34.    Defendant describes the presence of cranberries and raisins as "a sweet and delicious way to consume more fruit throughout the day."

35.    Defendant makes this representation of the fruit despite it being one of the main sources of added sugar in the Product.

36.    One twenty-two-ounce package of Nature's Garden Cranberry Healthy Trail Mix contains a total of 180 grams of sugar, including **80 grams of added sugar**.  One serving of Defendant's Cranberry Health variety is a mere ¼ cup, which is roughly one handful of trail mix. Defendant represents that one serving constitutes 9 grams of total sugar, including 4 grams of added sugar.

**Recommended Daily Sugar Intake**

37.    Due to the various health concerns associated with excess added sugar consumption, the American Heart Association ("AHA") recommends that adult women consume no more than 100 calories per day of added sugar and that adult men consume no more than 150 calories per day of added sugar.[1]

38.    One gram of added sugar contains approximately 4 calories.[2]  Therefore, an adult woman should consume no more than 25 grams of added sugar per day, an adult man should consume no more than 38 grams of added sugar per day, and a child should consume no more than 12 grams of added sugar per day.

39.    Similar recommendations for limited added sugar intake have been made by the

---

[1] American Heart Association, *Added* Sugars, https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars#:~:text=The%20Ingredient%20with%20Many%20Different%20Names&text=There%20you%20will%20see%20%E2%80%9Cadded,not%20counting%20the%20other%20ingredients.
[2] *Id.*

World Health Organization.[3]

40.     Importantly, serving size recommendations do not always accurately reflect the quantities products are consumed in.  Defendant is well aware that consumers typically eat more than the suggested serving size.  In fact, consumers typically consume three to four servings of trail mix in one sitting.[4]

41.     Any child who consumes any of Defendant's Products will exceed their recommended daily added sugar intake from only two or three handfuls of trail mix.

42.     Plaintiff, as well as countless members of the putative class, would exceed their daily recommended added sugar intake from eating only three handfuls (three servings) of Defendant's Omega-3 Deluxe Mix.

43.     Plaintiff, as well as countless members of the putative class, would consume approximately half of their daily recommended added sugar intake from eating only three handfuls (three servings) of Defendant's Heart Healthy Trail Mix and Defendant's Cranberry Health Mix. Because of the prevalence of added sugar in the American diet, this would all but guarantee that consumers will exceed their daily recommended added sugar intake.[5]  This is true even for those seeking to avoid added sugar.

44.     This is increasingly problematic for those who consume Defendant's Product(s) on a nearly daily basis, believing the Products to be a "healthy" snack.

45.     Consumers exceedingly rely on companies, like Defendant, in making informed

---

[3] World Health Organization, *WHO calls on countries to reduce sugars intake among adults and children*, https://www.who.int/news/item/04-03-2015-who-calls-on-countries-to-reduce-sugars-intake-among-adults-and-children#:~:text=A%20new%20WHO%20guideline%20recommends,would%20provide%20additional%20health%20benefits.

[4] *Is Trail Mix Actually Healthy?*, Brandon Hall; https://www.stack.com/a/is-trail-mix-actually-healthy/#:~:text=Most%20people%20go%20well%20above,and%2028%20grams%20of%20sugar.

[5] *The sweet danger of sugar*, Harvard Health Publishing; https://www.health.harvard.edu/heart-health/the-sweet-danger-of-sugar#:~:text=%22The%20effects%20of%20added%20sugar,Hu.

decisions for healthy eating.

**Scientific Evidence Shows That Excessive Sugar Consumption Leads To Health Complications**

46.     Consuming sugar from whole foods, like fruits and vegetables, does not present the same health risks as the consumption of added sugar.[6]  This is mainly due to the way in which the sugar from these natural sources is metabolized.[7]

47.     Conversely, diets high in added sugar consumption have been shown to lead to numerous health complications, including but not limited to heart disease, diabetes, obesity, high cholesterol, and hypertension.

*Heart Disease*

48.     According to the Centers for Disease Control and Prevention ("CDC"), heart disease is the leading cause of death in the United States.[8]

49.     Several studies have examined the relationship between diets high in added sugar consumption and heart disease.

50.     Such studies have found an "observed association between usual percentage of calories from added sugar and increased risk of [cardiovascular disease] mortality was largely consistent across age group, sex, race/ethnicity [], educational attainment, [and] activity level."[9]

51.     Data obtained from the National Health and Nutrition Examination Survey over a fifteen-year period found that those who consumed between 10% - 24.9% of their calories from added sugar had a 30% greater risk of cardiovascular disease mortality compared to those who

---

[6] *Id.*
[7] *Id.*
[8] https://www.cdc.gov/heartdisease/index.htm#:~:text=Heart%20disease%20is%20the%20leading,can%20lead%20to%20heart%20attack.
[9] *Added Sugar Intake and Cardiovascular Diseases Mortality Among US Adults*, Quanhe Yang, PhD, et al.; https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/1819573

consumed 5% or less of their calories from added sugar.[10]

52.     Additionally, several risk factors that contribute to heart disease include diabetes, obesity, high cholesterol, and hypertension.[11]

*Diabetes*

53.     Diabetes is the seventh leading cause of death in the United States.[12]

54.     The National Diabetes Statistics Report has estimated that 37.3 million Americans have diabetes.[13]  An additional 96 million American adults have prediabetes.[14]

55.     Developing diabetes has been strongly linked to diets high in added sugar.[15]  For example, a 2010 study found that, "based on data from eight prospective cohort studies (nine data points), including 310,819 participants and 15,043 cases of type 2 diabetes, participants in the highest category of [sugar-sweetened beverages] intake had a 26% greater risk of developing type 2 diabetes than participants in the lowest category of intake."[16]  Moreover, "larger studies with longer durations of follow-up tended to show stronger associations."[17]

56.     Similar findings have been shown in countless studies.[18][19]

---

[10]  *Id.*

[11]  https://www.cdc.gov/heartdisease/facts.htm

[12]  https://www.cdc.gov/diabetes/library/spotlights/diabetes-facts-stats.html#:~:text=37.3%20million%20Americans%E2%80%94about%201,t%20know%20they%20have%20it.

[13]  *Id.*

[14]  *Id.*

[15]  https://www.healthline.com/nutrition/does-sugar-cause-diabetes#sugars-role

[16]  *Sugar-Sweetened Beverages and Risk of Metabolic Syndrome and Type 2 Diabetes*, Vasanti S. Malik, SCD, et al.; https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2963518/

[17]  *Id.*

[18]  *Sugar-Sweetened Beverages, Weight Gain, and Incidence of Type 2 Diabetes in Young and Middle-Aged Women*, Matthias B. Schulze, DrPH, et al.; https://jamanetwork.com/journals/jama/fullarticle/199317

[19]  *Sugar-sweetened beverages and risk of obesity and type 2 diabetes: Epidemiologic evidence*, Frank B. Hu, MD, PhD, et al.; https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2862460/

57.     The CDC has found that those who develop diabetes are twice as likely to have heart disease than those who do not have diabetes.[20]  Additionally, people with diabetes are also more likely to have other conditions that raise the risk of heart disease, including high cholesterol and hypertension.[21]

*Obesity*

58.     The CDC estimates that over 40% of Americans suffer from obesity.[22]

59.     "Obesity related conditions include heart disease, stroke, type 2 diabetes and certain types of cancers.  These are among the leading causes of preventable, premature death."[23]

60.     To prevent obesity, the CDC strongly encourages Americans to consume fewer added sugars.[24]

61.     Studies have found positive correlations between sugar consumption and obesity when sugar is overconsumed.[25]

62.     "There are epidemiological data, plausible mechanisms and clinical data from diet intervention studies that provide strong support for a direct causal/contributory role of sugar in the epidemics of metabolic disease, and for an indirect causal/contributory role mediated by sugar consumption promoting body weight and fat gain."[26]

63.     Consuming excessive amounts of added sugar can lead to increased cravings for

---

[20] https://www.cdc.gov/diabetes/library/features/diabetes-and-heart.html#:~:text=If%20you%20have%20diabetes%2C%20you,are%20to%20have%20heart%20disease.

[21] *Id.*

[22] https://www.cdc.gov/obesity/data/adult.html#:~:text=The%20US%20obesity%20prevalence%20was,from%2030.5%25%20to%2042.4%25.

[23] *Id.*

[24] https://www.cdc.gov/nutrition/data-statistics/added-sugars.html

[25] *The Dose Makes the Poison: Sugar and Obesity in the United States—a Review*, Samir Faruque, et al.; https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6959843/

[26] *Sugar consumption, metabolic disease and obesity: The state of the controversy*, Kimber L. Stanhope; https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4822166/

sugar, leading to cycles of overeating.[27]

64.    Although obesity can have many causes, consuming excessive amounts of added sugar is widely believed to be a leading source.[28]

*High Cholesterol*

65.    The CDC estimates that nearly 40% of American adults have high cholesterol.[29]

66.    "Too much cholesterol puts you at risk for heart disease and stroke, two leading causes of death in the United States.[30]

67.    Dr. Haitham Ahmed, a preventative cardiologist, explained that "[s]ugar has deleterious effects on the heart, and it's important to be aware of them."[31]

68.    Diets high in added sugar can increase your "bad" cholesterol and decrease your "good" cholesterol, which can contribute to heart disease.[32]

69.    These findings have been supported by several clinical studies.[33][34]

*Hypertension*

70.    "High blood pressure (hypertension) is a common condition in which the long-term force of the blood against your artery walls is high enough that it may eventually cause health

---

[27] *Evidence for sugar addiction: Behavioral and neurochemical effects of intermittent, excessive sugar intake*, Nicole M. Avena, et al.; https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2235907/

[28] *Obesity, Sugar and Heart Health*, Chiadi E. Ndumele, M.D., M.H.S.; https://www.hopkinsmedicine.org/health/wellness-and-prevention/obesity-sugar-and-heart-health

[29] https://www.cdc.gov/cholesterol/index.htm

[30] *Id.*

[31] *Why a Sweet Tooth Spells Trouble for Your Heart*, Cleveland Clinic; https://health.clevelandclinic.org/sweet-tooth-spells-trouble-heart/#:~:text=Diets%20high%20in%20sugar%20make,a%20type%20of%20blood%20fat).

[32] *Id.*

[33] *Soft Drink Consumption and Risk of Developing Cardiometabolic Risk Factors and the Metabolic Syndrome in Middle-Aged Adults in the Community*, Ravi Dhingra, et al.; https://www.ahajournals.org/doi/10.1161/CIRCULATIONAHA.107.689935?url_ver=Z39.88-2003&rfr_id=ori:rid:crossref.org&rfr_dat=cr_pub%20%200pubmed

[34] *Caloric Sweetener Consumption and Dyslipidemia Among US Adults*, Jean A. Welsh, MPH, RN, et al.; https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3045262/

---

problems, such as heart disease."[35]

71.     The CDC estimates that nearly half of American adults have hypertension.[36]

72.     Several clinical studies have found that consuming too much added sugar can lead to hypertension.[37][38]

**Federal And State Labeling Requirements**

73.     Several of Defendant's Products contain statements that violate FDA food labeling regulations, which have been adopted as California's labeling regulations pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875, *et seq.* (the "Sherman Law").  *See id.* § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulations adopted pursuant thereto.").

74.     Defendant's health and wellness statements challenged herein are false and/or misleading, making the Products misbranded in violation of 21 U.S.C. § 343(a).  Accordingly, Defendant has also violated California's parallel provision of the Sherman Law.  *See* Cal. Health & Safety Code § 110660.

75.     Defendant's health and wellness statements challenged herein also "fail to reveal facts that are material in light of other representations made or suggested by the statement, word, design, device, or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1).  Such facts include the detrimental health consequences of consuming added sugars in the amounts present in

---

[35] https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/symptoms-causes/syc-20373410#:~:text=High%20blood%20pressure%20(hypertension)%20is,problems%2C%20such%20as%20heart%20disease.

[36] https://www.cdc.gov/bloodpressure/facts.htm#:~:text=Nearly%20half%20of%20adults%20in,are%20taking%20medication%20for%20hypertension.

[37] *Added Sugar Intake is Associated with Blood Pressure in Older Females*, Safiyah Mansoori, et al.; https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6770020/

[38] *Sugar-Sweetened Beverage, Sugar Intake of Individuals, and Their Blood Pressure*, Ian J. Brown, et al.; https://www.ahajournals.org/doi/10.1161/HYPERTENSIONAHA.110.165456

---

CLASS ACTION COMPLAINT                                                                                  16

the challenged Products.

76.     Defendant similarly failed to reveal facts that were "[m]aterial with respect to the consequences which may result from use under the article under [both] (i) [t]he conditions prescribed in such labeling [and] (ii) such conditions of use as are customary or usual," in violation of 21 C.F.R. § 1.21(a)(2).  Specifically, Defendant failed to disclose the increased risk of serious chronic disease likely to result from the usual consumption of its Products in the customary manner (including wherein people typically consume multiple servings of trail mix in one sitting).

77.     Defendant's implied and express health claims challenged herein also violate 21 C.F.R. §§ 101.14(d)(2)(ii), (iii) and (e) because, for the reasons discussed herein, the claims are not "complete, truthful, and not misleading," and many of the claims—like "heart healthy"—are not "limited to describing the value that ingestion (or reduced ingestion) of the substance, as part of a total dietary pattern, may have on a particular disease or health-related condition."

**Defendant Knowingly Violates Federal And State Laws To Increase Sales**

78.     Statements that the Products are "healthy" are false and/or misleading due to their high added sugar content and the consequences of consuming the Products.

79.     Statements that the Products are "heart healthy" suggest that they are effective in promoting bodily health and preventing disease.

80.     However, due to their high quantities of added sugar, consuming the Products are likely to lead to heart disease, diabetes, obesity, high cholesterol, and/or hypertension.

81.     As a national food manufacturer, Defendant knows or reasonably should know about the dangers of consuming high quantities of added sugar.

82.     Despite such knowledge, Defendant continues to misrepresent its Products as "heart healthy," to 1) charge consumers a price premium for the Products; 2) distinguish its Products from other trail mixes in the market; and 3) increase sales and profits.

**Defendant's Disclaimer Is Insufficient**

83.   Knowing that its Products are not truly "heart healthy," Defendant places the following disclaimer on the back of its Products: "Scientific evidence suggests but does not prove that eating 1.5 ounces per day of most nuts as part of a diet low in saturated fat and cholesterol may reduce the risk of heart disease."



84.   Defendant may argue that the presence of this disclaimer complies with the requirements of 21 C.F.R. § 101.75 and support its health claims.

85.   However, such a disclaimer is woefully inadequate, because 1) it is intentionally

placed away from the "heart healthy" representations; 2) it is intentionally provided for in fine-print so that it will go unnoticed by reasonable consumers; 3) it does not appear on the front packaging despite an identical "heart healthy" representation being present; and 4) the asterisk employed by Defendant is not connected to several other representations on the Products, including the "Health Mix," "Heart Healthy Trail Mix," and "Omega-3" representations.

86.     Reasonable consumers are likely to be confused as to what the asterisk relates to, as Defendant provides several additional representations on the Products' labeling:



87.     Further, such a disclaimer is deficient, as it does not provide that "coronary heart disease risk depends on many factors," as required by 21 C.F.R. § 101.75(c)(2)(E).

88.     Defendant designed and labeled the Products intentionally so that reasonable consumers would believe the Products are "heart healthy," despite the high levels of added sugar.

## CLASS ALLEGATIONS

89.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

90.     The Class is defined as all consumers in the United States who purchased the Products during the applicable statute of limitations period. (the "Class").

91.     Plaintiff also seeks to represent a subclass defined as all Class Members who purchased the Products in California (the "California Subclass").

92.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

93.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

94.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

(a) Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

(b) Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

(c)  Whether Defendant made false and/or misleading statements concerning the Products that were likely to deceive the public;

(d)  Whether Plaintiff and the Class are entitled to injunctive relief;

(e)  Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

95.  Typicality: Plaintiff is a member of the Classes she seeks to represent.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

96.  Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her consumer fraud claims are common to all other Class Members and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation and she intends to vigorously prosecute this action.  Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

97.  The Class is properly brought and should be maintained as a class action under Rule 23(b) because a class action is superior to traditional litigation of this controversy.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual Class Members.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.  In addition, this Class is superior to

other methods for fair and efficient adjudication of this controversy because, *inter alia*:

98.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

(a) The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

(b) The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—it not totally impossible—to justify individual actions;

(c) When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

(d) This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

(e) Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

(f) This class action will assure uniformity of decisions among Class Members;

(g) The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

(h) Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

(i) It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase the Products.

99.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**COUNT I**
**Violation of Consumers Legal Remedies Act**
**Civil Code §§ 1750, *et seq.***

100.    Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

101.    Plaintiff brings this claim individually, and on behalf of the California Subclass against Defendant.

102.    This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

103.    Plaintiff and the California Subclass Members are consumers who purchased Defendant's Products for personal, family, or household purposes.  Accordingly, Plaintiff and the California Subclass Members are "consumers," as the term is defined by Cal. Civ. Code § 1761(d).

104.    At all relevant times, Defendant's Products constituted "goods," as that term is defined in Civ. Code § 1761(a).

105.    At all relevant times, Defendant was a "person," as that term is defined in Civ. Code § 1761(c).

106.    At all relevant times, Plaintiff's purchases of Defendant's Products, and the purchases of other California Subclass Members constituted "transactions," as that term is defined in Civ. Code § 1761(e).

107.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was

undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

108.    The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Defendant's Products to Plaintiff and the California Subclass.  Defendant's practices, acts, policies, and course of conduct violated the CLRA § 1750 *et seq.*, as described above.

109.    Defendant represented that its Products have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of California Civil Code § 1770(a)(5).

110.    Defendant represented that its Products were of a particular standard, quality, and grade, when they were another, in violation of California Civil Code § 1770(a)(7).

111.    Defendant violated California Civil Code §§ 1770(a)(5) and (a)(7) by representing that its Products were "heart healthy," when in fact they were not.

112.    Defendant represented that its Products were of a particular standard or quality when Defendant was aware that they were of another in violation of § 1770(a)(7) of the CLRA.  Defendant represented that its Products were "heart healthy," when in fact they were not.

113.    Defendant advertised its Products with intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA.  Defendant intended to not sell the Products as effective products, because it knows those Products are not in fact "heart healthy," due to the high quantities of added sugar.

114.    Plaintiff and the California Subclass Members suffered injuries caused by Defendant's misrepresentations because: (a) Plaintiff and the California Subclass Members would not have purchased the Products on the same terms if they had known the true facts; (b) Plaintiff and the California Subclass Members paid a premium price due to the mislabeling of Defendant's Products; and (c) Defendant's Products did not have the level of safety, quality, effectiveness, or

value as promised.

115.    Prior to the filing of this Complaint, a CLRA notice letter was served on Defendant that complies in all respects with California Civil Code § 1782(a).  On February 17, 2022, Plaintiff sent Defendant a letter via certified mail, return receipt requested, advising Defendant that they are in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.  A copy of the letter is attached as **Exhibit A**.  Defendant failed to respond to the letter or take the requested corrective action.  Wherefore, Plaintiff seeks damages, restitution, and injunctive relief for this violation of the CLRA.

## COUNT II
### Violation of False Advertising Law, Business & Professional Code §§ 17500, *et seq.*

116.    Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

117.    Plaintiff brings this claim individually, and on behalf of the California Subclass against Defendant.

118.    California's FAL, (Bus. & Prof. Code §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,…in any advertising device…or in any other manner or means whatever, including over the Internet, any statement, concerning…personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

119.    Throughout the Class Period, Defendant committed acts of false advertising, as defined by § 17500, by using false and misleading statements to promote the sale of the Products, as described above, including but not limited to, representing that the Products were "heart healthy," when in fact they were not.

120.     Defendant knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

121.     Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

122.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and the California Subclass Members have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and the California Subclass Members would not have purchased the Products if they had known the true facts regarding the nature of the Products; (b) Plaintiff and the California Subclass Members paid a price premium due to the misrepresentations about the Products; and (c) the Products did not have the promised quality, effectiveness, or value.

123.     Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective and disclosures to consumers. Plaintiff and the California Subclass are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

### COUNT III
### Violation of Unfair Competition Law, Business & Professional Code §§ 17200, *et seq.*

124.     Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

125.     Plaintiff brings this claim individually, and on behalf of the California Subclass against Defendant.

126.     Defendant is subject to the UCL, Bus. & Prof. Code § 17200 *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."  The UCL

also provides for injunctive relief and restitution for violations.

127.     "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

128.     Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

129.     Defendant has violated the FDCA by misbranding the Products as "heart healthy," even though they are not.  21 U.S.C. § 343(a).

130.     In doing so, Defendant has also violated California's Sherman Law §§ 109875, *et seq.*, including but not limited to, §§ 110290, 110390, 110395, 110400, and 110660.

131.     Defendant has further violated the UCL's "unlawful prong" as a result of its violations of the CLRA, and FAL, as well as by breaching express and implied warranties as described herein.

132.     Throughout the Class Period, Defendant committed acts of unfair competition, as defined by § 17200, by using false and misleading statements to promote the sale of the Products, as described above.

133.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendant's conduct is unfair in that the harm to Plaintiff and the California Subclass Members arising from Defendant's conduct outweighs the utility, if any, of those practices.

134.     Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that the Products are "heart healthy," despite containing high quantities of added sugar.  Defendant's practice of injecting misinformation into the marketplace about the nature and benefit of its Products is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate health information.  Taking advantage of that trust, Defendant misrepresents the nature and benefit of its Products to increase its sales.  Consumers believe that Defendant is an authority on health claims and therefore believe Defendant's representations that its Products are "heart healthy."

135.     Defendant's conduct described herein, violated the "fraudulent" prong of the UCL by representing that the Products were "heart healthy," when in fact they were not.

136.     Plaintiff and the California Subclass Members are not sophisticated experts with independent knowledge of health claims, and they acted reasonably when they purchased the Products based on their belief that Defendant's representations were true.

137.     Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Products were untrue and misleading.

138.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and the California Subclass Members have suffered injury and actual out of pocket losses as a result of Defendant's unfair, unlawful, and fraudulent business acts and practices because: (a) Plaintiff and the California Subclass Members would not have purchased the Products on the same terms if they had known the true facts regarding the true nature of the Products; (b) Plaintiff and the California Subclass Members paid a price premium due to the misrepresentations of Defendant's Products; and (c) Defendant's Products did not have the quality and effectiveness or value as promised.

139.     Pursuant to California Business & Professions Code §17203, Plaintiff and the

California Subclass Members are therefore entitled to: (a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

## COUNT IV
## Breach of Express Warranty

140.    Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

141.    Plaintiff brings this claim individually and on behalf of the Class against Defendant.

142.    As the designer, manufacturer, marketer, distributer, and/or seller, Defendant expressly warranted that the Products were "heart healthy."

143.    Defendant's affirmations of fact and promise made to Plaintiff and the Class on the Products' labels and in online advertising became part of the basis of the bargain between Defendant on the one hand, and Plaintiff and Class Members on the other, thereby creating express warranties that the Products would conform to Defendant's affirmations of fact, representations, promises, and descriptions.

144.    However, clinical studies show that the Products are not "heart healthy," due to the high amounts of added sugar.

145.    As such, Defendant breached this warranty.  In short, the Products are not "heart healthy," as expressly warranted.

146.    Plaintiff and Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Products on the same terms if they had known the true facts; (b) they paid a price premium due to the mislabeling of the Products; and (c) the Products did not have the quality, effectiveness or value as promised.

147.    On or about February 28, 2022, prior to filing this action a pre-suit notice letter was

served on Defendant which complied in all respects with U.C.C. § 2-607.  Plaintiff sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it breached numerous warranties and violated state consumer protection laws, and demanding that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's letter is attached hereto as **Exhibit A**.

## COUNT V
## Breach of Implied Warranty of Merchantability

148.    Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

149.    Plaintiff brings this claim individually and on behalf of the Class against Defendant.

150.    Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of its Products, made representations to Plaintiff and the Class Members that the Products are "heart healthy."  Plaintiff and the Class Members bought high-sugar Products bearing health and wellness claims manufactured, advertised, and sold by Defendant as described herein.

151.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class Members, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

152.    However, Defendant breached that implied warranty because the high-sugar Products bearing health and wellness claims are not healthy, as set forth herein.

153.    As an actual and proximate result of Defendant's conduct, Plaintiff and the Class Members did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the label of the goods.

154.    Plaintiff and the Class have sustained damages as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Products if the true facts concerning their efficacy had been known; (b) they paid a price premium for the Products based on

Defendant's representations regarding the Products' efficacy; and (c) the Products did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiff and the Class have been damaged.

155.    Plaintiff notified Defendant of the breach prior to filing the lawsuit and prior to asserting a claim for breach, but Defendant failed to rectify the breach.

**COUNT VI**
**Unjust Enrichment**

156.    Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

157.    Plaintiff brings this claim individually and on behalf of the Class against Defendant.

158.    "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007).

159.    Plaintiff and Class Members conferred a benefit on Defendant by purchasing the Products and by paying a price premium for them.

160.    Defendant has knowledge of such benefits.

161.    Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Products, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that the Products are "heart healthy."  This misrepresentation cause injuries to Plaintiff and Class Members, because they would not have

purchased the Products, or they would not have paid as much for the Products, if the true facts regarding the nature of the Products were known.

162.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, individually and on behalf of the Class and Subclass, prays for judgment as follows:

(a)    Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class and the California Subclass under Rule 23 of the FRCP, and Plaintiff's attorneys as Class Counsel to represent the Class and California Subclass;

(b)    An order declaring Defendant's conduct violates the statutes referenced herein;

(c)    Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes nationwide;

(d)    Awarding monetary damages, including treble damages

(e)    Awarding punitive damages;

(f)    Awarding Plaintiff and Class and Subclass Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g)    Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

Dated:  April 11, 2022                                   Respectfully submitted,

                                                        **BURSOR & FISHER, P.A.**

                                                        By:____*/s/ L. Timothy Fisher*_____

                                                        L. Timothy Fisher (State Bar No. 191626)
                                                        1990 North California Boulevard, Suite 940
                                                        Walnut Creek, CA  94596
                                                        Telephone: (925) 300-4455
                                                        Facsimile: (925) 407-2700
                                                        E-Mail: ltfisher@bursor.com

                                                        *Counsel for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper venue for trial because many of the acts and transactions giving rise to this action occurred in this District.

3.      Plaintiff Joi Butts is a resident of Vallejo, California and purchased the product at issue in this District.

4.      Defendant Cibo Vita, Inc. is a corporation with its principal place of business located in Totowa, New Jersey.  Defendant conducts substantial business across the country, including in California.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on April 11, 2022 at Walnut Creek, CA.


                                        */s/ L. Timothy Fisher*
                                        L. Timothy Fisher

**EXHIBIT A**

# BURSOR & FISHER

P.A.

**1990 N. CALIFORNIA BLVD.**
**SUITE 940**
**WALNUT CREEK, CA 94596**
**www.bursor.com**

**L. TIMOTHY FISHER**
Tel: **925.300.4455**
Fax: **925.407.2700**
**ltfisher@bursor.com**

February 17, 2022

*Via Certified Mail - Return Receipt Requested*

Cibo Vita, Inc.
12 Vreeland Avenue
Totowa, NJ 07512

Re:    *Demand Letter Pursuant to California Civil Code § 1782; U.C.C. § 2-314; all other applicable state and federal laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Cibo Vita, Inc. ("You," "Your," or "Defendant") pursuant to numerous provisions of California law, including but not limited to subsections (a)(5), (7), and (9) of the Consumers Legal Remedies Act, Civil Code § 1770 and U.C.C. § 2-314 concerning the violations of the law and breaches of warranty described herein on behalf of our client, Joi Butts, and all other similarly situated purchasers. Further, Defendant has violated the Federal Food, Drug, and Cosmetic Act, 28 U.S.C. §§ 301 *et seq.*, and its implementing regulations, 21 C.F.R. §§ 101 *et seq.*, by making misleading health claims related to Your Nature's Garden Trail Mix products (the "Products"[1]). These requirements are fully incorporated into California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. ("Sherman Law"), and are actionable pursuant to the unlawful prong of the UCL.

You have participated in the manufacturing, marketing and sale of Nature's Garden Trail Mix Products.  Each of the Products contains a prominent representation on the front of the bag that the Products are "Heart Healthy."  However, this statement is false and misleading, as the Products have far too much added sugar to provide any health benefits.  For example, one 26-ounce package of Nature's Garden Heart Healthy Trial Mix contains a total of 250 grams of sugar, including 125 grams of added sugar.  Consuming such excessive amounts of added sugar greatly increases an individual's risk of heart disease, diabetes, and obesity.

These acts and practices as described herein violated, and continue to violate, the CLRA in at least the following respects:

a.      in violation of Section 1770(a)(5), You represented that the Products have characteristics and benefits they do not have;

---

[1] The "Products" refer to the following varieties of Nature's Garden Trail Mix: Heart Healthy Trial Mix, Omega-3 Deluxe Mix, and Cranberry Health Mix.

  b.  in violation of Section 1770(a)(7), You represented that the Products are of a particular standard, quality, or grade, when they are not; and

  c.  in violation of Section 1770(a)(9), You advertised the Products with an intent not to sell them as advertised.

Ms. Butts purchased Your Products, including Nature's Garden Heart Healthy Trail Mix and Nature's Garden Cranberry Health Mix, multiple times during the class period, including as recently as last year from a brick-and-mortar Walmart located in Vallejo, California. Ms. Butts relied on the "Heart Healthy" representation when deciding to purchase the Products. Had You not mislabeled Your Products with deceptive and misleading health claims, Ms. Butts would not have purchased them. Therefore, Ms. Butts intends to bring an action individually, and on behalf of a class defined as all persons in the United States who purchased the Products. Ms. Butts also intends to bring an action on behalf of a subclass of persons who purchased the Products in the state of California.

To cure these defects, we hereby demand that You immediately make full restitution to all purchasers of the Products of all purchase money obtained from sales thereof. If You do not, we will commence a putative class action seeking monetary relief on behalf of Ms. Butts and all others similarly situated.

We also demand that You promptly take all reasonable steps to preserve all documents, data, and information, including without limitation, all "Writings," as defined in California Evidence Code § 250 (collectively, "Documents"), and all "Electronically Stored Information," as defined in California Code of Civil Procedure § 2016.020(e), which refer or relate to any of the above-described practices, including, but not limited to, the following:

  1.  All documents concerning the design, development, and/or testing of the Products,

  2.  All documents concerning the advertisement, labeling, marketing, or sale of the Products.

  3.  All documents concerning communications with purchasers of the Products, including but not limited to customer complaints.

  4.  All documents concerning Your total revenue derived from sales of the Products in California and the United States.

  5.  All documents concerning the identity of individual purchasers of the Products.

  6.  All documents concerning any recalls of the Products.

BURSOR & FISHER
P.A.

7.      All documents concerning any communications with any governmental entity regarding the Products.

If You contend that any statement in this letter is inaccurate in any respect, please provide us with Your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from You promptly, I will take that as an indication that You are not interested in doing so.

Very truly yours,

L. Timothy Fisher