UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOI BUTTS, | No. 2:22-cv-00644-DAD-KJN |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT |
| CIBO VITA, INC., | |
| Defendant. | (Doc. Nos. 4, 5) |

This matter is before the court on defendant's motion to dismiss plaintiff's complaint (Doc. No. 4.) The pending motion was taken under submission by the previously assigned district judge on July 8, 2022. (Doc. No. 15.)[1] For the reasons explained below, defendant's motion to dismiss will be granted.

**BACKGROUND**

On April 11, 2022, plaintiff Joi Butts filed the complaint initiating this putative consumer protection class action against defendant Cibo Vita, Inc., a food product manufacturing company. (Doc. No. 1 at ¶¶ 1–4, 13.) Therein, plaintiff alleges that defendant used deceptive, false, and misleading business practices in marketing and labeling its trail mix products as "heart healthy," even though the trail mix allegedly contains excessive amounts of added sugar. (*Id.*)

---

[1] On August 25, 2022, this case was reassigned to the undersigned. (Doc. No. 18.)

1

1    Specifically, in this action, plaintiff challenges defendant's labeling of the following nut-based
2    trail mix products, which defendant markets under its brand name Nature's Garden:  (i) Nature's
3    Garden Heart Healthy Trail Mix, a blend of walnuts, raisins, cranberries, almonds, pepitas, and
4    dark chocolate chunks; (ii) Nature's Garden Omega-3 Deluxe Mix, a blend of almonds, pecans,
5    walnuts, cranberries, pistachios, and pepitas; and (iii) Nature's Garden Cranberry Health Mix, a
6    blend of cranberries, walnuts, almonds, raisins, peanuts, pepitas, and sunflower seeds;
7    (collectively, "the Products").  (*Id.* at ¶ 1.)

8    In her complaint, plaintiff includes photographs of the front and back of the Products'
9    packaging.  (*Id.* at ¶¶ 16, 19, 23, 26, 30, 33.)  As reflected in those photographs, on the upper
10   right-hand corner of the front and back of each of the Product's packaging, there is a statement
11   "Heart Healthy" with a heart symbol and an asterisk, which pairs with the following statement in
12   the middle of the back of the packaging:  "Scientific evidence suggests but does not prove that
13   eating 1.5 ounces per day of most nuts as part of a diet low in saturated fat and cholesterol may
14   reduce the risk of heart disease."  (*Id.*)  In addition, the name of the Products is stated on the front
15   and back of the packaging, e.g., "Heart Healthy Trail Mix," "Omega-3 Deluxe Mix," and
16   "Cranberry Health Mix."  (*Id.*)  On the back of each Product's packaging, statements are made
17   regarding the individual ingredients, including that cranberries and raisins are "a sweet and
18   delicious way to consume more fruit throughout the day."  (*Id.* at ¶¶ 19, 26, 33.)  The nutrition
19   facts panel on the back of each Product's packaging states that the serving size is 1/4 cup (30
20   grams) and lists the amount of total sugars per serving, including added sugars, in grams and
21   percent of daily value ("DV").  (*Id.*)  Specifically, as reflected on the Products' nutrition facts
22   panels, a serving of the heart healthy mix contains 10 grams of total sugar, including 5 grams of
23   added sugar (10% DV); a serving of the omega-3 mix contains 10 grams of total sugar, including
24   9 grams of added sugar (18% DV); and a serving of the cranberry mix contains 9 grams of total
25   sugar, including 4 grams of added sugar (8% DV).  (*Id.*)  The Products' packaging does not
26   include any other statements regarding sugar.

27   Plaintiff alleges as follows in her complaint.  Plaintiff reviewed the statements on the
28   packaging of the Products and relied on the representations that the trail mix was "heart healthy"

2

in deciding to purchase the Products, specifically the heart healthy mix and the cranberry mix. (*Id.* at ¶¶ 10–11.)[2] Defendant's representations of the Products as "heart healthy" are allegedly false, misleading, and deceptive representations because the "Products are not 'heart healthy' due to the excessive amounts of added sugar." (*Id.* at ¶ 11.) In her complaint, plaintiff refers to several scientific studies and reports to support her allegations that "[e]xcessive consumption of added sugar has consistently been found to increase the risk of several medical conditions, including but not limited to, heart disease, diabetes, obesity, high cholesterol, and hypertension." (*Id.* at ¶¶ 2, 46–72.) Defendant markets its Products as "heart healthy" despite allegedly "being aware of the numerous negative health complications that can arise from consuming excessive amounts of added sugar." (*Id.* at ¶¶ 17, 24, 31.) Defendant is allegedly "well aware that consumers typically eat more than the suggested serving size," usually "3–4 servings of trail mix in one sitting," and thus consumers would exceed their daily recommended added sugar intake (25 grams for adult women, 38 grams for adult men) by eating only three servings of the omega-3 mix. (*Id.* at ¶¶ 38, 40, 42.) Similarly, consumers "would consume approximately half of their daily recommended added sugar intake from eating only three handfuls (three servings)" of the heart healthy mix and the cranberry mix. (*Id.* at ¶ 43.) According to plaintiff, "[d]efendant failed to disclose the increased risk of serious chronic disease likely to result from the usual consumption of its Products in the customary manner (including wherein people typically consume multiple servings of trail mix in one sitting)." (*Id.* at ¶ 76.) Defendant allegedly "designed and labeled the Products intentionally so that reasonable consumers would believe the Products are 'heart healthy,' despite the high levels of added sugar." (*Id.* at ¶ 88.)

Plaintiff alleges that she would not have purchased the Products if she had known the truth, and she "did not receive the benefit of the bargain, because [the] Products are not 'heart healthy.'" (*Id.* at ¶ 12.) Plaintiff would, however, "be interested in purchasing [the] Products in the future if the representations about the Products being 'heart healthy' were true." (*Id.*)

/////

---

[2] Plaintiff does not allege that she purchased the omega-3 mix.

3

1    Plaintiff seeks to represent a class of "all consumers in the United States who purchased
2    the Products during the applicable statute of limitations period," as well as a subclass of "all class
3    members who purchased the Products in California" (the "California subclass"). (*Id.* at ¶¶ 90–
4    91.) On behalf of herself and the California subclass, plaintiff brings three state law claims: (1) a
5    violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §
6    1750, *et. seq.*; (2) a violation of California's False Advertising Law ("FAL"), California Business
7    & Professions Code § 17500, *et. seq.*; and (3) a violation of California's Unfair Competition Law
8    ("UCL"), California Business & Professions Code § 17200, *et. seq.* (*Id.* at 24–30.) On behalf of
9    herself and the class, plaintiff brings an express warranty claim, an implied warranty of
10   merchantability claim, and an unjust enrichment claim. (*Id.* at 30–33.)

11   On June 2, 2022, defendant filed the pending motion to dismiss plaintiff's complaint on
12   the grounds that plaintiff's claims are expressly preempted, plaintiff fails to state a claim upon
13   which relief can be granted, and plaintiff fails to plead fraud with the requisite particularity.
14   (Doc. No. 4.)[3] Plaintiff filed an opposition to the pending motion on July 7, 2022, and defendant
15   filed its reply thereto on July 21, 2022. (Doc. Nos. 14, 17.)

16   /////
17   /////

---

[3] Defendant also concurrently filed an unopposed request for judicial notice in support of the pending motion, requesting that the court take judicial notice of photographs of the Products' packaging that are less blurry than the photographs included in the complaint, as well as two public records published by the Food and Drug Administration ("FDA"): (1) Qualified Health Claims: Letter of Enforcement Discretion – Nuts and Coronary Heart Disease, published on July 14, 2003, Docket No. 02P-0505; and (2) Guidance for Industry regarding a declaration of added sugars on certain cranberry products, published in June 2019, Docket No. 2018-D-0075. (Doc. Nos. 5, 4-2, 4-3, 4-4, 4-5, 4-6.) The court will grant defendant's request for judicial notice because the photographs of the Products' packaging are the same photographs as those in the complaint, albeit less blurry, and the FDA documents are matters of public record and made available on the FDA's website. *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) ("[A] court may take judicial notice of 'records and reports of administrative bodies.'") (citation omitted); *see also Anderson v. Holder*, 673 F.3d 1089, 1094 (9th Cir. 2012) (taking judicial notice of a federal agency's published interpretation); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1116 (C.D. Cal. 2010) ("find[ing] that the FDA Food Labeling Guide is a judicially noticeable document").

**LEGAL STANDARD**

**A.      Motion to Dismiss Pursuant to Rule 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint

/////

necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

**B.     Pleading Fraud Pursuant to Rule 9(b)**

A complaint alleging fraud must also satisfy heightened pleading requirements. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003)). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess*, 317 F.3d at 1107.

"Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124 (citation and internal quotation marks omitted). To satisfy the particularity standard of Rule 9(b), the plaintiff must allege the "'who, what, when, where, and how' of the misconduct charged." *Id.* (citing *Vess*, 317 F.3d at 1106).

**ANALYSIS**

**A.     Whether Plaintiff's CLRA, FAL, and UCL Claims are Preempted**

   1.     <u>Legal Standard</u>

Congress has enacted federal laws to "create uniform national standards regarding the labeling of food" and has given the Food and Drug Administration ("FDA") "the responsibility to protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled.'" *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1071 (N.D. Cal. 2017) (citations omitted). In furtherance of this aim, Congress included an explicit preemption provision in the relevant statute. *Id.* (citing 21 U.S.C. § 343–1(a)).

/////

6

As one district court recently summarized:

> Preemption in the context of food mislabeling claims can be a hard nut to crack, but it ultimately boils down to a few key principles. First, the Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, and its amendments implemented through the Nutrition Labeling and Education Act of 1990 ("NLEA"), expressly preempt state laws and claims for relief that seek to impose "non-identical requirements in the field of food labeling." More specifically, these requirements stem from 21 U.S.C. § 343(r), which outlines "nutrient content claims," both express and implied, as well as "health claims." . . . [Second,] [w]here a state law claim attempts to impose the same requirements under federal law, however, this problem does not arise. . . . [Third,] if federal law is *silent* as to a specific type of label statement, a claim that the statement is misleading is typically not preempted.

*Effinger v. Ancient Organics LLC*, No. 22-cv-03596-RS, 2023 WL 2214168, at *3 (N.D. Cal. Feb. 24, 2023) (internal citations omitted).

Pursuant to the federal regulations promulgated by the FDA to implement the NLEA, "health claims" and "nutrient content claims" that are made in compliance with those regulations are permissible on food labels. A health claim is defined as "any claim made on the label or in labeling of a food . . . that expressly or by implication, including . . . written statements (e.g., a brand name including a term such as 'heart'), [or] symbols (e.g., a heart symbol), . . . characterizes the relationship of any substance to a disease or health-related condition." 21 C.F.R. § 101.14(a)(1). An express health claim expressly characterizes the relationship, whereas "[i]mplied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition." *Id.* A nutrient content claim is "[a] claim that expressly or implicitly characterizes the level of a nutrient . . . ." 21 C.F.R. § 101.13(b).

The FDA's regulations prohibit certain health claims and nutrient content claims where the food product contains "disqualifying nutrients" in an amount that exceeds specified levels for that particular nutrient. 21 C.F.R. § 101.14(a)(4), (e); *see also* 21 C.F.R. § 101.65(d)(2). The FDA specifically prohibits any health claims from being made if any of the following four nutrients are above a certain level in the food product: "total fat, saturated fat, cholesterol, or

7

sodium." 21 C.F.R. § 101.14(a)(4) ("Disqualifying nutrient levels means the levels of total fat, saturated fat, cholesterol, or sodium in a food above which the food will be disqualified from making a health claim."). The FDA has expressly decided not to include "sugar" as a disqualifying nutrient.[4] "Therefore, federal law preempts any state law that would prohibit health or nutrient-content claims due to added sugar in the challenged products." *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 971 (N.D. Cal. 2022); *see also LeGrand v. Abbott Lab'ys*, No. 22-cv-05815-TSH, 2023 WL 1819159, at *6 (N.D. Cal. Feb. 8, 2023) ("Because state law restrictions must be identical to FDCA restrictions on labeling of nutrient levels, [plaintiff's] state law claims will be preempted to the extent [plaintiff] argues that nutrient content claims on Ensure labels are misleading because they indicate the products are healthy despite containing high levels of sugar.").

        2.        <u>Application</u>

In the pending motion to dismiss, defendant argues that plaintiff's claims brought under the CLRA, FAL, and UCL are preempted because the allegedly misleading statements on the Products' packaging constitute permissible health claims under the NLEA. (Doc. No. 4 at 11, 22–25.) Defendant emphasizes that the health claim on its Products—the "Heart Healthy" statement with the heart symbol and asterisked disclosure statement "[s]cientific evidence suggests but does not prove that eating 1.5 ounces per day of most nuts as part of a diet low in

---

[4] Throughout the last thirty years, the FDA has consistently declined to include "sugar" as a disqualifying nutrient. *See* Food Labeling; General Requirements for Health Claims for Food, 58 Fed. Reg. 2478-01, 2491 (Jan. 6, 1993) ("FDA does not believe that a disqualifying level for sugars can presently be established . . . ."); *see also* Food Labeling: Nutrient Content Claims, Definition of Term: Healthy, 59 Fed. Reg. 24232-01, 24244 (May 10, 1994) ("The agency has not been persuaded by the comments that it is necessary to include a 'low calorie' or 'low sugar' criterion in the definition of "healthy" for the claim to be useful and not misleading to consumers. . . . Thus, the agency is not requiring that a food be 'low calorie' or 'low' in sugar to bear the term 'healthy.'"); Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33742-01, 33744, 33803 (May 27, 2016) ("Revising the Nutrition Facts label by . . . [r]equiring the declaration of the gram amount of 'added sugars' in a serving of a product," but explaining that the FDA was "not basing a mandatory declaration of added sugars for the general population on an independent relationship between added sugars and risk of chronic disease," noting that the FDA was "instead, basing an added sugars declaration on the need to provide consumers with information to construct a healthy dietary pattern that is low in added sugars.").

saturated fat and cholesterol may reduce the risk of heart disease"—is specifically authorized by the FDA. (*Id.* at 15–16.) Defendant cites to the FDA's Letter of Enforcement Discretion, Docket No. 02P-0505, in which the FDA "conclude[d] that there is a sufficient basis for a qualified health claim about nuts and reduced risk of [coronary heart disease]" and provided the following disclosure statement for health claims to be made on nut-containing products:

> Scientific evidence suggests but does not prove that eating 1.5 ounces per day of most nuts [, such as *name of specific nut*,[5]] as part of a diet low in saturated fat and cholesterol may reduce the risk of heart disease.

(Doc. No. 4 at 15–16) (citing Doc. No. 4-2 at 2–5).

In her opposition to the pending motion, plaintiff argues that the "heart healthy" representation on the Products does not qualify as a health claim under the NLEA because "it does not express a relationship between [a health related] condition and a particular substance." (Doc. No. 14 at 11–12.) Plaintiff does not dispute that the disclosure statement on the Products is verbatim the same as the disclosure statement required by the FDA, implicitly acknowledging that such disclosure statement expresses a relationship between the consumption of nuts (a particular substance) and the risk of heart disease (a health condition). Rather, plaintiff argues that the disclosure statement on the Products does not comply with the regulations because of its placement, size, and typeface. (*Id.* at 12.) However, in support of this argument, plaintiff cites to two provisions of the regulations that do not apply here: 21 C.F.R. § 101.14(e)(3), which pertains to disclosure statements regarding disqualifying nutrients, and 21 C.F.R. § 101.13(h), which pertains to disclosure statements regarding fat content. (*Id.*) In addition, the court notes that although the regulations pertaining to "nutrient content claims" require that such claims "shall be in type size no larger than two times the statement of identity and shall not be unduly prominent in type style compared to the statement of identity," there is no requirement regarding type size or style in the regulations governing "health claims." *Compare* 21 C.F.R. § 101.13(f) (nutrient content claims) *with* 21 C.F.R. § 101.14 (health claims).

---

[5] The FDA's Letter of Enforcement Discretion clarifies that "use of the bracketed phrase that refers to the name of a specific nut is optional." (Doc. No. 4-2 at 3.)

Contrary to plaintiff's suggestion that the "heart healthy" representations on the Products are "standalone statements," those statements are properly viewed together with the disclosure statement, which "characterizes the relationship of any substance"—i.e., nuts—"to a disease or health-related condition"—i.e., heart disease. Thus, the court agrees with defendant that the "heart healthy" statements qualify as "health claims," and as such, plaintiff's challenge to those claims is preempted by the NLEA. *See* 21 C.F.R. § 101.14(a)(1); *see also Hadley*, 273 F. Supp. 3d at 1073 ("Plaintiff's theory that health claims or implied nutrient content claims are misleading because of a certain amount of added sugar in a product would essentially 'ascribe disqualifying status' to added sugar. This would create a state law requirement that is different from federal law. Therefore, any such claims are preempted."); *Clark v. Perfect Bar, LLC*, 816 F. App'x 141, 143 (9th Cir. 2020)[6] (holding that "[a]ppellants' state law claims predicated on the theory that [the protein bars] were mislabeled are preempted" and concluding that "[t]o the extent Appellants' claims advance the notion that Perfect Bar made an improper health claim due to added sugar levels in the bar, those claims are not viable"). The Ninth Circuit has explained that "[a]llowing a claim of misbranding under California law based on misleading sugar level content would 'indirectly establish' a sugar labeling requirement 'that is not identical to the federal requirements,' a result foreclosed by our precedent." *Clark*, 816 F. App'x 141, 143 (citing *Hawkins v. Kroger Co.*, 906 F.3d 763, 770 (9th Cir. 2018)).

The court also finds that the word "health," as used in the name of the cranberry mix, should not be viewed as a standalone statement either because that word is presented in the context of the "heart healthy" representations, which suggests a relationship between the presence of nuts in the trail mix and heart disease. Thus, the use of the term "health" in this context constitutes an "implied health claim," and as such, plaintiff's claims challenging that statement are likewise preempted. *See* 21 C.F.R. § 101.14(a)(1) ("Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context

/////

---

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition.").

Having concluded that plaintiff's state law claims brought under the CLRA, FAL, and UCL are preempted,[7] the court will grant defendant's motion to dismiss those claims.[8] The court next addresses defendant's motion to dismiss plaintiff's remaining claims in turn.

**B.     Plaintiff's Express Warranty Claim**

California Commercial Code § 2313, which defines the term "express warranty," applies to "transactions in goods." *See* Cal. Com. Code § 2102; *see also* Cal. Civ. Code § 1791.2(a)(1) (defining "express warranty" as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance."). Under California Commercial Code § 2313, "[t]o prevail on a breach of express warranty claim, a plaintiff must prove that the seller '(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff.'" *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013) (citation omitted).

In her opposition to the pending motion, plaintiff maintains that the allegations in her complaint are sufficient to state an express warranty claim. (Doc. No. 14.) Plaintiff points to her

---

[7] Because the court concludes that plaintiff's CLRA, FAL, and UCL claims are preempted and must be dismissed on that basis, the court need not address defendant's other arguments regarding these claims.

[8] To the extent plaintiff intended to rely on the statement that cranberries and raisins "are a sweet and delicious way to consume more fruit throughout the day" as a basis for her CLRA, FAL, and UCL claims, plaintiff appears to have abandoned such reliance because she did not respond to defendant's arguments that such a statement constitutes mere puffery and cannot give rise to a cognizable cause of action. (Doc. No. 4 at 28.) The court agrees with defendant that this statement constitutes non-actionable puffery because "sweet" and "delicious" are generalized, subjective, vague, and unspecific assertions that cannot be measured concretely. *See Hadley*, 273 F. Supp. 3d at 1081 ("'Generalized, vague, and unspecified assertions constitute "mere puffery" upon which a reasonable consumer could not rely,' and thus are not actionable under the UCL, FAL, or CLRA.") (quoting *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)) (brackets omitted).

11

1    allegations that "[d]efendant expressly warranted that the Products were 'heart healthy,'" and
2    "[d]efendant breached this warranty" because "clinical studies show that the Products are not
3    "heart healthy," due to the high amounts of added sugar. (Doc. No. 1 at ¶¶ 142–45.)  Plaintiff
4    further alleges that defendant's breach injured her and the putative class members "because:  (a)
5    they would not have purchased the Products on the same terms if they had known the true facts;
6    (b) they paid a price premium due to the mislabeling of the Products; and (c) the Products did not
7    have the quality, effectiveness or value as promised." (*Id.* at ¶ 146.)

8        In moving to dismiss, defendant argues that these allegations are insufficient to state a
9    cognizable express warranty claim here because the "heart healthy" statements on the Products
10   are tied to the stated nutritional and health benefits of nuts in connection with heart disease, and
11   "the mere fact that a product contains added sugar does not render it inherently unhealthy." (Doc.
12   No. 4 at 17–18.)  Defendant emphasizes that "[n]one of the articles or studies Plaintiff cites
13   provide scientific evidence that the suggested health benefits of consuming nuts or any other
14   comparable nutrient dense product become ineffective due to added sugars." (*Id.* at 19.)

15       Notably, defendant does not make any "low sugar" or "no added sugar" representation on
16   the Products; rather, the Products' packaging complies with the FDA's requirements that the
17   nutrition facts panel state the amount of total sugars and added sugars per serving size—which
18   plaintiff does not contest.  In other words, the Products do not misrepresent the amount of added
19   sugars in the trail mix.  In addition, the "heart healthy" statements on the Products are identical to
20   the statements that the FDA has specifically permitted as a qualifying health claim for nut-
21   containing products.  As described above, the FDA permits this health claim regardless of the
22   amount of sugar in the Products because sugar is not a "disqualifying nutrient."

23       Thus, plaintiff's express warranty claim is untenable and will also be dismissed.
24   Challenged statements that have been found to be preempted or to constitute puffery are "not
25   actionably misleading statement[s]." *Hadley*, 273 F. Supp. 3d at 1093.  In addition, preempted
26   and puffery statements "cannot create an express warranty." *Id.* at 1094 (dismissing express
27   warranty claims with prejudice where the plaintiff's claims were based on statements that the
28   court found to be preempted or puffery); *see also Andrade-Heymsfield v. NextFoods, Inc.*, No.

3:21-cv-01446-BTM-MSB, 2022 WL 1772262, at *6 (S.D. Cal. Apr. 27, 2022) ("Statements that amount to puffery cannot be the basis for an express warranty violation claim.").

**C.      Plaintiff's Implied Warranty of Merchantability Claim**

"The implied warranty of merchantability can be violated on a number of bases, such as that the product is not 'fit for the ordinary purposes for which such good [is] used,' or that it does not '[c]onform to the promises or affirmations of fact made on the container or label if any.'" *LeGrand*, 2023 WL 1819159, at *14 (citations omitted). "When an implied warranty of merchantability cause of action is based solely on whether the product in dispute '[c]onforms to the promises or affirmations of fact' on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product." *Hadley*, 273 F. Supp. 3d at 1096 (citation omitted).

Here, plaintiff alleges in her complaint that she "did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the label of the goods." (Doc. No. 1 at ¶ 153.) In opposing the pending motion, plaintiff argues that her allegations are sufficient to state an implied warranty of merchantability claim because "the Products were not fit as heart healthy snacks due to their high-sugar content." (Doc. No. 14 at 18.) That is, plaintiff does not allege in her complaint, nor argue in her opposition brief, that the Products were unfit to be consumed. Plaintiff's implied warranty claim is based solely on whether the Products conformed to defendant's representation of the trail mix as being heart healthy—the same basis for plaintiff's express warranty claim. As a result, plaintiff's implied warranty of merchantability claim necessarily fails and must be dismissed as well. *See Hadley*, 273 F. Supp. 3d at 1096; *see also McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-02327-BAS-JLB, 2018 WL 3956022, at *13 (S.D. Cal. Aug. 17, 2018) ("[B]ecause the Court found that Plaintiffs have not sufficiently pled their express breach of warranty claims, the Court likewise finds that Plaintiffs fail to plead their implied breach of merchantability claims."); *Kennard v. Kellogg Sales Co.*, No. 21-cv-07211-WHO, 2022 WL 4241659, at *8 (N.D. Cal. Sept. 14, 2022) ("Because the express warranty claim fails as a matter of law, so does plaintiff's implied warranty claim.").

### D.     Plaintiff's Unjust Enrichment Claim

In her complaint, plaintiff alleges that "defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Products, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that the Products are 'heart healthy.'" (Doc. No. 1 at ¶ 161.) Plaintiff further alleges that "[b]ecause Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for their unjust enrichment." (*Id.* at ¶ 162.)

The parties dispute whether a standalone, independent unjust enrichment claim is a viable cause of action. (Doc. Nos. 4 at 29; 14 at 19.) Indeed, courts have not been clear on this question.[9] This court need not resolve this dispute, however, because there is not an actionable misrepresentation on the Products packaging in this case. Thus, even if such a claim is recognized under California law, there is no basis for plaintiff's unjust enrichment claim here.

Accordingly, defendant's motion to dismiss plaintiff's unjust enrichment claim will also be granted.

### E.     Leave to Amend

Although plaintiff requests in her opposition that the court grant her leave to amend if any aspect of defendant's motion is granted, plaintiff does not proffer any additional allegations that

---

[9] As one district court recently summarized:

> California courts have not been clear on the extent to which unjust enrichment is available as a standalone cause of action. *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (collecting cases). Recent unpublished decisions in the Ninth Circuit reflect the uncertainty. *Compare Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020) ("'[U]njust enrichment is not a cause of action' under California law.") (quoting *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004)), *with Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) ("[T]he California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed in an insurance dispute.") (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 1000 (2015)).

*LeGrand*, 2023 WL 1819159, at *14.

she would include in an amended complaint. (Doc. No. 14 at 22.) More importantly, however, plaintiff's challenges to the statements on the Products' packaging are preempted by federal food labeling laws. Granting plaintiff leave to amend her claims would therefore be futile. *See Clark*, 816 F. App'x at 143 (affirming dismissal without leave to amend of the plaintiff's claims that a protein bar's packaging "made an improper health claim due to added sugar levels in the bar" because those claims are preempted and "not viable"); *Hadley*, 273 F. Supp. 3d at 1093–94 (dismissing with prejudice the plaintiff's claims that challenged preempted and puffery statements because granting leave to amend would be futile).

Accordingly, the court will grant defendant's motion to dismiss plaintiff's complaint, without leave to amend.

## CONCLUSION

For the reasons explained above,

1. Defendant's request for judicial notice (Doc. No. 5) is granted;

2. Defendant's motion to dismiss (Doc. No. 4) is granted;

3. This action is dismissed; and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **March 20, 2023**

_____
UNITED STATES DISTRICT JUDGE